IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

SHEILA RAE TAYLOR,               )       CASE NO. 1:14-CV-686
                                 )
                Plaintiff,       )       JUDGE CHRISTOPHER A. BOYKO
v.                               )
                                 )       MAGISTRATE JUDGE
                                 )       KENNETH S. McHARGH
                                 )
COMMISSIONER OF SOCIAL           )
SECURITY ADMINISTRATION,         )       **REPORT & RECOMMENDATION**
                                 )
                Defendant.       )

This case is before the Magistrate Judge pursuant to Local Rule 72.2(b).  The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Sheila Rae Taylor's ("Plaintiff" or "Taylor") application for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Magistrate Judge recommends that the decision of the Commissioner be AFFIRMED.

## I.  PROCEDURAL HISTORY

Plaintiff protectively filed an application for Disability Insurance benefits on June 2, 2011. (Tr. 11, 152-55).  Taylor alleged she became disabled on August 15, 2009. (Tr. 152).  The Social Security Administration denied Plaintiff's application on initial review and upon reconsideration. (Tr. 95-98, 105-11).

At Taylor's request, administrative law judge ("ALJ") Traci Hixson convened an administrative hearing on August 14, 2012, to evaluate her application. (Tr. 25-62).  Plaintiff, represented by counsel, appeared and testified before the ALJ. (*Id*).  A vocational expert ("VE"),

Nancy Borgeson, also appeared and testified. (*Id.*).  On January 24, 2013, the ALJ issued a decision finding Plaintiff was not disabled. (Tr. 11-20).  After applying the five-step sequential analysis,[1] the ALJ determined Taylor retained the ability to perform work existing in significant numbers in the national economy. (*Id.*).  Subsequently, Plaintiff requested review of the ALJ's decision from the Appeals Council. (Tr. 7).  The Appeals Council denied her request for review, making the ALJ's January 24, 2013, determination the final decision of the Commissioner. (Tr. 1-3).  Taylor now seeks judicial review of the ALJ's final decision under 42 U.S.C. § 405(g).

## II. EVIDENCE

### A.  Personal and Vocational Evidence

Taylor was born on August 30, 1964, and was 42-years-old on the date of her on alleged disability onset. (Tr. 18, 152).  Accordingly, she was considered a "younger person" for Social

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability."  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

   (1)     If a claimant is doing substantial gainful activity–i.e., working for profit–she is not disabled.

   (2)     If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

   (3)     If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

   (4)     If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

   (5)     Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

Security purposes.  *See* 20 C.F.R. §§ 404.1563(c).  Taylor completed the ninth grade and has past relevant work as a cook and cashier. (Tr. 18, 29, 55).

**B.  Medical Evidence[2]**

**1.  Leg and back impairments**

In August 2009, Plaintiff presented to the emergency room with complaints of pain and swelling in her left leg and foot. (Tr. 952).  It was noted that Taylor had a history of diabetes and hypertension. (*Id.*).  Emergency room doctors were unable to identify the etiology of Plaintiff's pain, but discharged her in improved and stable condition. (Tr. 953).

On November 23, 2009, Taylor was seen at the emergency room with complaints of pain and swelling that had persisted in her left calf for three days. (Tr. 944).  She also described slight shortness of breath and weakness. (*Id.*).  Medical records do not seem to indicate what further treatment Plaintiff received on this date.  Testing performed in January 2010 revealed a deep vein thrombosis ("DVT"). (Tr. 267).

In June 2010, Plaintiff returned to the emergency room with left leg pain and swelling. (Tr. 383, 399). However, tests revealed no recurrent DVT. (Tr. 749).  Doctors diagnosed Taylor with superficial inflammation of a vein and sent her home without further treatment. (Tr. 384). One month later, Plaintiff presented to emergency care providers with complaints of generalized weakness. (Tr. 360, 375).  Aside from a note regarding her obesity, Taylor's physical examination was within normal limits and doctors discharged her without admission. (Tr. 360).

Taylor sought treatment eight times with her primary care physician Edward White, M.D., or other health care providers in his practice, from January through December of 2011. (Tr. 1171-73, 1176-78, 1181-82).  During each of these visits, Plaintiff complained of pain in her

---

[2] The following recital of Plaintiff's medical record is an overview of the medical evidence pertinent to Plaintiff's appeal.  It is not intended to reflect all of the medical evidence of record.

left leg and other health concerns. (*Id.*).  On April 21, 2011, Dr. White observed that Plaintiff had good range of motion in her hip and knee. (Tr. 1178).

Plaintiff underwent a lumbar spine x-ray, due to radiating left leg pain, on May 2, 2011. (Tr. 680). The imaging revealed mild degenerative changes of the lower and dorsal lumbar spine, but no significant changes since her previous x-ray from April 2009. (*Id.*).

On December 14, 2011, Plaintiff's physician noted that her straight leg raises were negative and reflexes were generally normal. (Tr. 1171).  Although the doctor found no clinical signs of neuropathy or radiculopathy, Plaintiff was prescribed Vicodin and encouraged to see a rheumatologist or pain management specialist. (*Id.*).

In January 2012, Taylor initiated treatment with rheumatologist Stanley Ballou, M.D. (Tr. 1061).  She had complaints of pain in her entire left leg, some weakness in the left leg, and difficultly walking for long distances. (*Id.*).  She denied swelling, numbness, or tingling in her leg, but identified mild chronic pain in her low back. (*Id.*).  She was taking tramadol and Vicodin. (*Id.*).  Dr. Ballou noted Taylor's medical history was significant for type 2 diabetes, morbid obesity, left leg DVT followed by pulmonary embolus in 2007, remote hysterectomy, remote appendectomy, and endometrial cancer. (*Id.*).

Upon examination, the doctor observed that Plaintiff weighed 309 pounds and ambulated with a slight limp favoring the left leg. (*Id.*).  Plaintiff's lumbar spine showed diminished extension and lateral flexion. (*Id.*). Her hips had a good range of motion; her knees were without effusions and there was only minimal crepitus with flexion and extension. (*Id.*).  Plaintiff had no swelling of the lower extremities. (*Id.*).  Taylor had diffuse dysesthesias of her left leg with palpation and slightly diminished proximal muscle strength. (*Id.*). Dr. Ballou opined that the etiology of Plaintiff's chronic generalized left leg pain was unclear. (*Id.*).  He speculated that

Taylor may have lumbar disc disease and recommended a lumbosacral spine x-ray. (*Id.*). The x-ray revealed mild multilevel degenerative changes throughout the lumbar spine, with some disc space narrowing primarily at L4-5 and L5-S1, and the suggestion of facet hypertrophy involving the lower lumbar spine. (Tr. 1062).

On February 8, 2010, Dr. Ballou concluded that Plaintiff's history, examination, and x-ray findings were consistent lumbar spine osteoarthritis with radiculopathy symptoms affecting the left leg. (Tr. 1164-65).  On examination, Dr. Ballou noted that Plaintiff ambulated somewhat slowly with a slight limp. (Tr. 1164).  Plaintiff denied significant pain in the right leg. (*Id.*).  The doctor discussed the benefits of regular exercise, including stretching, range of motion, and walking or using a treadmill on a regular basis. (Tr. 1165).  He prescribed Neurontin and recommended follow up in three months. (*Id.*).

An April 10, 2012, medical student progress note from MetroHealth Systems indicated that Plaintiff presented with complaints of plain in left leg and heaviness, which were aggravated by walking and standing. (Tr. 1309).  A physical examination showed that she had no joint edema and a full active and passive range of motion in all joints. (Tr. 1311).

That same day, Plaintiff saw Dr. Ballou and voiced new complaints of pain in both legs and tingling in her feet. (Tr. 1313).  Dr. Ballou stated that Plaintiff realized her symptoms were related to her diabetes with neuropathy, and she admitted that recently, her diabetes may not have been well controlled. (*Id.*).  The doctor indicated it was not clear whether Plaintiff had been exercising regularly. (*Id.*).  Upon physical examination, Dr. Ballou observed that Taylor weighed 288 pounds and had only a trace of lower extremity edema. (*Id.*). There was no inflammatory synovitis of the peripheral joints, Taylor's hands showed excellent grip strength, and her Tinel's and Phalen's signs were negative. (*Id.*).  Dr. Ballou opined that Plaintiff had symptomatic

5

diabetic neuropathy and symptoms consistent with fibromyalgia. (*Id.*).  He advised her to increase her prescription of Neurontin, until she was able to begin treatment with her new primary care physician, and to exercise on a regular basis. (*Id.*).

Later in April 2012, Plaintiff began treatment with primary care physician, Stephanie Sadlon, M.D., for diabetes. (Tr. 1318).  On examination, Dr. Sadlon found decreased pulses and senses in Taylor's feet. (Tr. 1319).  The doctor informed Plaintiff that it could take six weeks before medication would result in a noticeable improvement in her neuropathy. (*Id.*). On May 16, 2012, Plaintiff returned to Dr. Sadlon and reported no improvement in her leg pain. (Tr. 1329). The doctor noted that Plaintiff's feet were absent pulses, increased Plaintiff's dosage of medication, and urged Plaintiff to be more consistent with her meals. (Tr. 1329-31).

### 2.  Abdominal impairments and endometrial cancer

On September 14, 2010, Plaintiff presented to the emergency room experiencing issues with a surgical wound from an appendectomy she had three weeks prior. (Tr. 344).  The wound was draining a yellowish-green fluid and Taylor described pain. (*Id.*).  Later that month, Taylor underwent a CT scan of her pelvis, which showed operative changes from Taylor's appendectomy and a developing abscess. (Tr. 294).  In November 2010, Plaintiff underwent an incision and drainage procedure to remove the abscess from her abdominal wall. (Tr. 278-79).

Pathology reports from May 2011 revealed an endometrial malignancy for which hematologist and oncologist Peter Rose, M.D., felt a total abdominal hysterectomy/bilateral salpingo-oophorectomy ("TAH/SBO") was necessary. (Tr. 981).  Plaintiff underwent surgery in July 2011. (*Id.*).  Dr. Rose completed a disability questionnaire in September 2011 in which he explained that Plaintiff's stage I endometrial cancer was localized and the malignancy was resectable.  (Tr. 976).  Taylor underwent complete excision, did not require chemotherapy or

radiation treatment, and had a good prognosis. (*Id.*).   In October 2011, Dr. Rose found no abnormalities upon examination and no evidence of recurrent disease. (Tr. 1091).

During November 2011, Plaintiff went to the emergency room with complaints of abdominal pain, nausea, and generalized malaise. (Tr. 1087-88).  Taylor was admitted for IVF hydration and antiemetics. (*Id.*).  A CT scan revealed an abscess at her prior abdominal incision. Plaintiff underwent drainage of the abscess, and after one night in the hospital, her pain was well-controlled and she was discharged in stable condition. (*Id.*).

In March 2012, Plaintiff consulted with a physician regarding an abdominal hernia. (Tr. 1300). The physician opined that it was unclear whether Plaintiff's pain was related to a hernia or her July TAH/SBO. (Tr. 1301). In April 2012, surgeon Christopher Brandt, M.D., also concluded that Plaintiff's lower abdominal pain was of uncertain etiology. (Tr. 1302).  He noted that Plaintiff's CT scan showed an incisional hernia, but was not clear whether it contributed to her symptoms. (*Id.*).  Dr. Brandt opined that she would be at high risk for hernia repair due to her other medical conditions and obesity. (*Id.*).  He recommended that she consider bariatric surgery before hernia repair. (*Id.*).

### 3.   Medical source opinions

On September 30, 2011, state agency reviewing physician W. Jerry McCloud, M.D., assessed the medical record and opined as to Plaintiff's physical limitations. (Tr. 76-78). According to Dr. McCloud, Plaintiff could lift and carry up to 20 pounds occasionally and 10 pounds frequently; stand or walk for 4 hours and sit for 6 hours in an 8 hour workday; and push or pull using her left lower extremity frequently. (Tr. 76).  Dr. McCloud based these limitations on Plaintiff's obesity and history of DVT in the left leg. (*Id.*).  The doctor further found that Taylor could occasionally climb ramps or stairs, kneel, crouch, and crawl. (Tr. 76-77).  She

could frequently stoop, but never climb ladders, ropes, or scaffolds. (Tr. 77). Taylor was unlimited in her ability to balance, but must avoid all exposure to hazards. (*Id.*).

On February 16, 2012, Dr. White completed a questionnaire in connection with Plaintiff's disability application. (Tr. 1154-56).  He indicated that Plaintiff received treatment from November 3, 2009, to January 31, 2012. (Tr. 1155).  Dr. White listed Plaintiff's diagnoses and symptoms as: obesity, non-insulin dependent diabetes mellitus, pulmonary embolism in 2009, DVT in 2007, hypertension, a gangrenous appendix in 2010, abscess of a surgical site in 2010, an IVC filter in 2011, a TAH/SBO in 2011, uterine cancer diagnosed in 2011, a surgical wound infection in 2011, severe radiculopathy, lumbar spine osteoarthritis, and neuropathy. (*Id.*). The questionnaire asked Dr. White to describe with specificity any limitations that Plaintiff's impairments imposed on her ability to perform sustained work activity. (Tr. 1156).  In response, Dr. White wrote the following: "pain and weakness in the left leg, difficulty walking long distances, limitations relative to her obesity." (*Id.*).

On February 28, 2012, state agency reviewing physician Maria Congbalay, M.D., performed a review of the updated record. (Tr. 88-90).  She had the opportunity to evaluate Dr. White's February 2012 opinion, and concluded that Dr. White's finding that Plaintiff could not walk long distances was supported. (Tr. 88).  Dr. Congbalay's residual functional capacity opinion mirrored Dr. McCloud's opinion, except that she found Taylor could balance only frequently. (Tr. 88-90).

### III. SUMMARY OF THE ALJ'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.  The claimant meets the insured status requirements of the Social Security Act through March 31, 2013.

2. The claimant has not engaged in substantial gainful activity since July1, 2007, the alleged onset date.

3. The claimant has the following severe impairments:  osteoarthritis of the lumbar spine, diabetes mellitus, hypertension, obesity, and venous insufficiency.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) in that she can lift and carry twenty pounds occasionally and ten pounds frequently.  She can stand and walk four hours in an eight-hour workday and sit six hours in an eight-hour workday.  While she can frequently reach in all directions, hand, finger, and feel, she can only occasionally bend and balance.  However, she must never kneel or crawl and must avoid hazardous conditions.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on August 30, 1964 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

. . .

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2007, through the date of this decision.

(Tr. 13-19) (internal citations omitted).

## IV. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental

impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## V. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x. 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV. ANALYSIS

### A.  Treating Physician

Plaintiff argues that the ALJ violated the treating physician rule with respect to Dr. White, Plaintiff's general physician.  Around February 2012, Dr. White completed a form in connection with Plaintiff's application for disability in which he recounted Plaintiff's various diagnoses and medical issues, medications, and physical limitations. (Tr. 1155-56).  In determining Taylor's RFC, the ALJ gave "no weight" to Dr. White's opinion. (Tr. 17).  Plaintiff challenges the ALJ's decision on the ground that the ALJ did not provide adequate reasons for discounting the treating doctor.

It is well-established that an ALJ must give special attention to the findings of the claimant's treating sources. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). This doctrine, often referred to as the "treating source rule" is a reflection of the Social Security Administration's awareness that physicians who have a long-standing treating relationship with an individual are best equipped to provide a complete picture of the individual's health and treatment history. *Id.*; 20 C.F.R. §§ 416.927(c)(2), 404.1527(c)(2).

The treating source rule indicates that opinions from such physicians are entitled to controlling weight if the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record." *Wilson*, 378 F.3d at 544.  When a treating source's opinion is not entitled to controlling weight, the ALJ must determine how much weight to assign to the opinion by applying factors set forth in the governing regulations. 20 C.F.R. §§ 416.927(c)(1)-(6), 404.1527(c)(1)-(6).  The regulations also require the ALJ to provide "good reasons" for the weight ultimately assigned to the treating source's opinions that are sufficiently specific to make

clear to any subsequent reviewers the weight given to the treating physician's opinions and the reasons for that weight. *See Wilson*, 378 F.3d at 544 (*quoting* S.S.R. 96-2p, 1996 WL 374188, at *5).

In response to a question asking what limitations Plaintiff would suffer due to her impairments, Dr. White opined that Plaintiff would have "difficulty walking long distances." (Tr. 1156). Under this question, the doctor also wrote that Taylor had "pain and weakness in her left leg" and "limitations relative to her obesity." (*Id.*). Regarding Dr. White's latter two statements, it is unclear whether the physician intended to communicate that Plaintiff's symptomatic leg and obesity impaired her ability to walk long distances, or in the alternative, that these conditions themselves caused separate, additional limitations. If Dr. White wished to opine that Plaintiff was further limited by her leg and obesity, his response is not sufficiently specific to establish limitations. As a result, the Court will assume that Dr. White opined that Plaintiff was limited only in her ability to walk.

In her decision, the ALJ acknowledged that Dr. White found Plaintiff would have difficulty walking long distances. (Tr. 17). In discounting this limitation, the ALJ explained that Dr. White based his opinion on conditions that did not affect Taylor for at least a 12 month period or were not medically documented as impairments. (*Id.*). The ALJ explained that,

> while the claimant does have diabetes, obesity, hypertension, and osteoarthritis of the lumbar spine, the other impairments [Dr. White] included, such as DVT, gangrenous appendix, abscess, endometrial cancer, fibromyalgia, and total abdominal hysterectomy and bilateral salpingo-oophrectomy, were shown to have been either corrected before the one year mark or not fully medically documented as being an impairment.

(*Id.*).

On his disability assessment form, Dr. White listed a number of diagnoses, as well as medical procedures, that Plaintiff underwent. (Tr. 1155). Dr. White did not specify which of

12

Plaintiff's diagnoses or impairments made it, in his opinion, difficult for her to walk long distances. (Tr. 1155-56). The ALJ assumed that Dr. White based this limitation on all of the diagnoses listed, including those which arguably were short in duration or not medically documented as severe impairments. (Tr. 17). The ALJ concluded that as a result, the walking limitation lacked sufficient medical support. (*Id.*).

However, even if the ALJ correctly concluded that Dr. White based the limitation in part on conditions that resolved in less than a year or lacked severity, the ALJ's reasoning remains inadequate.  As Plaintiff points out, in the disability assessment Dr. White also identified limitations that the ALJ found were severe.  Indeed, when evaluating Dr. White's opinion, the ALJ acknowledged that Plaintiff suffered from diabetes, obesity, hypertension, and osteoarthritis of the lumbar spine. (Tr. 17).  The ALJ did not explain why these impairments failed to support the treating physician's limitation, despite Dr. White inclusion of them in his assessment. (*Id.*). Diabetes, obesity, hypertension, and lumbar spine issues are the types of impairments that may well affect an individual's ability to walk long distances.  As a result, without further explanation, the ALJ's decision to discount Dr. White because he may have partially based the walking limitation on non-severe or short-lived impairments is flawed.

Even though the ALJ's reasoning with regard to Dr. White is not entirely sound, remand on this basis is not appropriate.  An adjudicator's failure to adhere to the treating source rule will not always warrant remand. *Wilson*, 378 F.3d at 547.   A violation of the rule may be deemed harmless where (1) the treating source's opinion is patently deficient; (2) the Commissioner makes findings consistent with the doctor's opinion; or (3) the ALJ satisfies the goal of the "good reasons" requirement despite failing to adhere to the letter of the regulation. *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (*quoting Wilson*, 378 F.3d at 547).

13

"If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused." *Id*.

Under the circumstances here, the ALJ's error is harmless because the RFC is consistent with Dr. White's conclusion. The ALJ determined that Plaintiff could perform a limited range of light work, including the ability to stand or walk for four hours in an eight-hour workday. (Tr. 15). In this regard, the RFC reflects the opinion of state agency reviewing physician Dr. Congbalay. (Tr. 88-90). Dr. Congbalay reviewed the medical record, including Dr. White's opinion, which she found to be fully supported. (Tr. 88). Even after accepting Dr. White's limitation, Dr. Congbalay concluded that Plaintiff could stand or walk for up to four hours. (Tr. 89). Notably, Dr. White opined that Plaintiff would have difficulty walking *long* distances, not that she could not walk at all or for a specific period of time. Plaintiff does not cite to authority demonstrating that the RFC conflicts Dr. White's opinion. Thus, although the ALJ indicated an intent to discount Dr. White's opinion, the ALJ's ultimate findings adequately accommodated the doctor's limitation such that the ALJ's error in evaluating the opinion is harmless.

**B.  State agency reviewing consultant**

Next, Plaintiff argues that the ALJ erred in granting "controlling weight" to Dr. Congbalay because the physician did not have the benefit of reviewing the entire record when she formed her opinion. According to Taylor, significant medical evidence was produced subsequent to the state agency physician's review.

To begin, the Court notes that the ALJ attributed "significant," rather than controlling weight as Plaintiff states, to Dr. Congbalay's opinion. (Tr. 17). Granting significant weight to the state agency doctors' opinions is not, on its own, error mandating reversal. The regulations

14

recognize that opinions from non-examining state agency consultants may be entitled to significant weight, because these individuals are "highly qualified" and are "experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); *see Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).   Social Security Ruling 96-6p explains that "[i]n appropriate circumstances, the opinions from State agency medical . . . consultants may be entitled to greater weight than the opinions of treating or examining sources." S.S.R. 96-6p, 1996 WL 374180, at *3.  For example, the ruling provides that this may occur when "the State agency medical . . . consultant's opinion is based on a review of a complete case record that . . . provides more detailed and comprehensive information than what was available to the individual's treating source." *Id.*

The Sixth Circuit has explained that the example set forth in Social Security Ruling 96-6p "does not exhaust the range of 'appropriate circumstances' under which a non-treating source's opinion may be entitled to greater weight than that of a treating source. There is no categorical requirement that the non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record. The opinions need only be 'supported by evidence in the case record.' " *Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1002 (6th Cir. 2011) (internal citations omitted).   In  *McGrew v. Comm'r*, 343 F. App'x 26, 30-32 (6th Cir. 2009) the Sixth Circuit found an ALJ's reliance on state agency medical opinions' based on an incomplete record was not in error, because the ALJ considered medical examinations after the state assessments and accounted for changes in the plaintiff's condition in the RFC.

Here, the ALJ gave some explanation for crediting Dr. Congbalay's opinion.  The ALJ afforded the physician's opinion significant weight because she provided a persuasive and detailed analysis of Taylor's condition and medical records. (Tr. 17, 88-90).

The ALJ's opinion also demonstrates consideration of relevant medical records, following the state consultant's review, which was performed on February 28, 2012.  For example, the ALJ discussed treatment notes related to Plaintiff's diabetes, venous insufficiency, and hypertension, from April 2012 treatment sessions at MetroHealth and with Dr. Ballou. (Tr. 17, 18).  The doctor observed that Plaintiff had only a trace of lower extremity edema, no inflammation in her peripheral joints, and excellent grip strength in her hands. (Tr. 17, 18, 1313).  As the ALJ noted, a musculoskeletal examination also showed full active and passive range of motion in all joints without pain. (Tr. 18, 1311).  The ALJ also cited to Plaintiff's May 16, 2012, session with Dr. Sadlon during which Plaintiff complained of leg pain. (Tr. 17, 1329).

Plaintiff asserts that she complained of lower abdominal pain to medical providers after Dr. Congbalay's opinion.  The ALJ did not expressly discuss these particular complaints of abdominal pain, which Taylor made to healthcare providers once in March 2012 and on another occasion in April 2012. (Tr. 1300, 1302). However, this is omission does not lead to the conclusion that the ALJ failed to adequately consider the evidence. "Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) (*quoting Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The ALJ's review of the record otherwise is sufficiently thorough such that her failure to expressly address the two reports does not lead the Court to believe that they went unexamined. Moreover, during the two treatment sessions Plaintiff points to, physicians did not indicate that Plaintiff was limited by her condition, which they opined could be a hernia. (Tr. 1300, 1302).  Because Plaintiff was at high risk for hernia repair, Dr. Brandt recommended weight loss and bariatric surgery. (Tr. 1302).  Otherwise, it does not appear that the physician

ordered further treatment or prescribed medication.  Plaintiff does not point to additional medical treatment for this condition.

The ultimate responsibility for determining a claimant's RFC is reserved to the Commissioner.  *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  The ALJ had the duty to determine Plaintiff's RFC, while taking into account and weighing the opinions of both treating and non-examining sources. Though Taylor cites to a span of the administrative transcript that arose after the state review, she does not demonstrate how these medical records show a meaningful change in her health, such that the state agency reviewer's opinion would be rendered inaccurate or unreliable. Given that the ALJ sufficiently considered the relevant medical records that post-dated Dr. Congbalay's opinion, the ALJ fulfilled her duties and was entitled to rely on the state agency physician's conclusions.

### C.  Claimant's Credibility

Finally, Taylor maintains that the ALJ's credibility analysis was flawed in a number of regards.  Generally, "[a]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since [the] ALJ is charged with the duty of observing a witness's demeanor and credibility."  *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008) (*citing Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)).  Notwithstanding, the ALJ's credibility finding must be supported by substantial evidence, *Walters*, 127 F.3d at 531, as the ALJ is "not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.' " *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (*quoting* S.S.R. 96-7p, 1996 WL 374186, at *4).

The Sixth Circuit follows a two-step process in the evaluation of a claimant's subjective complaints of disabling pain. 20 C.F.R. §§ 404.1529, 416.929; *Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994).  First, the ALJ must determine whether the claimant has an underlying medically determinable impairment which could reasonably be expected to produce the claimant's symptoms.  *Rogers*, 486 F.3d at 247.  Second, if such an impairment exists, then the ALJ must evaluate the intensity, persistence and limiting effects of the symptoms on the claimant's ability to work. *Id.*  The ALJ should consider the following factors in evaluating the claimant's symptoms: the claimant's daily activities; the location, duration, frequency and intensity of the claimant's symptoms; any precipitating or aggravating factors; the type, dosage, effectiveness and side effects of any medication taken to alleviate the symptoms; treatment, other than medication, the claimant receives to relieve the pain; measures used by the claimant to relieve the symptoms; and statements from the claimant and the claimant's treating and examining physicians. *Id.*; *see Felisky*, 35 F.3d at 1039-40; S.S.R. 96-7p.

To this end, substantial evidence supports the ALJ's credibility determination here. Taking into account Taylor's testimony and statements made in her disability application, medical and other evidence, and the applicable factors for evaluating credibility, the ALJ concluded that Taylor's statements as to the intensity and limiting effects of her symptoms were not entirely credible. (Tr. 16-17).

The ALJ's decision includes sufficient reasons to support the adverse credibility finding. For example, the ALJ pointed out that recommendations by Taylor's treatment providers and the results of physical examinations undermined her statements regarding her physical activities and abilities. (Tr. 18).  More specifically, the ALJ explained that Plaintiff testified that she spent significant portions of the day in bed with her legs elevated due to her impairments. (Tr. 18, 51).

18

In contrast, Dr. Ballou, a physician who treated Taylor on a number of occasions, recommended that Taylor should perform regular exercise, including stretching and walking. (Tr. 18, 1165, 1313).  Additionally, despite Plaintiff's report that she could carry no more than five pounds on a regular basis, the ALJ recounted that physical examinations showed that she had a full range of motion in her neck, shoulders, elbows, and wrists, as well as excellent strength in her hands and no inflammatory synovitis in her peripheral joints. (Tr. 18, 26, 1311, 1313).

Plaintiff argues that the level of daily activities she described support a finding of disability, contrary to the ALJ's conclusion that they demonstrate she functioned independently. Taylor further asserts that the ALJ applied an inappropriate test when evaluating credibility, which Plaintiff alleges required that she be completely incapacitated in order to be found credible.  More specifically, Plaintiff takes issue with the portion of the disability determination in which the ALJ assessed that "daily activities of some degree continue in spite of [Plaintiff's] subjective allegations of incapacitating pain." (Tr. 17).  The ALJ indicated that aside from Plaintiff's own preference for inactivity, the evidence regarding Plaintiff's daily activities did not demonstrate good cause for Plaintiff's alleged limited activities. (*Id.*).

Plaintiff is correct in that her activities of daily living do not strongly portray an individual who is active or independent, such that one could conclude she was capable of performing full-time work. Taylor's activities as presented at the hearing generally involved no more than preparing microwave meals, maintaining personal hygiene, washing some dishes, and grocery shopping with the assistance of her sisters and an electric scooter. (Tr. 17, 30).

However, Taylor's argument that the ALJ applied an incorrect standard of review regarding credibility is not well taken.  The ALJ observed that Plaintiff did perform some level of activity, despite her testimony that she spent a significant portion of her day in pain or in bed.

(Tr. 17).  The ALJ's statement that Plaintiff's alleged inactivity may be attributed to her own preference was arguably not necessary.  However, the record reflects that Dr. Ballou encouraged regular physical activity, but questioned whether Plaintiff was compliant, suggesting that Plaintiff's motivation, rather than her physical impairments, were the cause of inactivity. (Tr. 1313).  Nevertheless, regardless of any error the ALJ may have committed when assessing Plaintiff's daily activities, the ALJ provided other independent, and reasonable grounds for concluding that Taylor was less than fully credible.  Those reasons were described previously herein and serve as substantial support for the ALJ's credibility analysis. Accordingly, remand on this issue is not appropriate.

Taylor also highlights that her complaints of leg pain have been consistent throughout the record and were supported by a diagnosis of symptomatic diabetic neuropathy. (Tr. 1313). However, despite Plaintiff's complaints, physicians did not indicate that Plaintiff was physically limited to a degree that rendered her disabled.  Additionally, the mere diagnosis of a condition does not speak to its severity or indicate the functional limitations caused by the ailment. *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990).  As a result, the fact that Dr. Ballou diagnosed Plaintiff with diabetic neuropathy is not enough to show that Plaintiff's complaints of pain were disabling or entitled to deference.

## VII. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence.  Accordingly, the undersigned recommends that the decision of the Commissioner be AFFIRMED.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date: June 9, 2015.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1).  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).